UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL E. OWENS AND**<br>**JOSEPH WAYNE ESPAT** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-4782** |
| **THE WESTERN & SOUTHERN LIFE**<br>**INSURANCE COMPANY AND**<br>**THE WESTERN & SOUTHERN LIFE**<br>**INSURANCE LONG TERM**<br>**INCENTIVE AND RETENTION PLAN** | **SECTION: "S" (4)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #66) is **GRANTED**, and this matter is **REMANDED** to the plan administrator for consideration.[1]

**IT IS FURTHER ORDERED** that this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** while the plaintiffs pursue the administrative process.

BACKGROUND

Plaintiffs, Earl E. Owens and Joseph Wayne Espat, are retired former employees of defendant, The Western & Southern Life Insurance Company. Western & Southern provides financial services including life and health insurance, retirement savings, and investment products and services. Both Owens and Espat were participants in the Western & Southern Agency Group Long Term Incentive and Retirement Plan (the "Plan"), which was "designed to provide an incentive for selected key field associates of the Western & Southern Agency Group to maximize performance and remain with the organization." To be eligible for participation in the Plan the employee must be "in the top 5% of Employees when ranked by annual compensation as measured during the previous calendar year." In 2006 and 2008, Owens and Espat, respectively, first became eligible to

---

[1] Plaintiffs' Motion for Summary Judgment (Doc. #56) is rendered moot by the remand to the plan administrator.

participate in the Plan. Kim Chiodi, Senior Vice President of Human Resources for The Western & Southern Financial Group, declared in her affidavit that it is Western & Southern's practice to provide the summary plan description, titled "Western & Southern Agency Group Field Long Term Incentive and Retention Plan Outline" to employees when they first become eligible to participate in the Plan.

The Plan includes a forfeiture provision, which states, in pertinent part:

> 4.7 <u>Forfeitures.</u> The contingent right of Participant or Beneficiary to receive future payments hereunder with respect to both vested and nonvested Performance Units shall be forfeited upon the occurrence of any one or more of the following events:
>
>     \*    \*    \*
>
> (b) If the Participant within three years after termination of employment with the Company or any Affiliate (1) enters into a business or employment which is competitive with the business of the Company or any Affiliate, (2) solicits the Company's or any Affiliates' employees, agents or clients to work for or buy products from, or (3) acts in any other way which, had the Participant been employed with the Company or any Affiliate, would have provided the Company with "Cause" to terminate such Participant's employment.
>
> However, the Executive Committee may, in its sole discretion waive or reduce the forfeiture of payments described above.

The summary plan description states:

> **Forfeiture, Vested and Unvested Units** - A participant's vested and unvested units will be forfeited if:
>
>     \*    \*    \*

2

>
> 3) A participant, within three years after termination of service, including service as a field associate or independent contractor, (a) engages in a business that competes with any of the business of the Western & Southern Financial Group, (b) solicits field associates, agents or clients of the enterprise for competitive employment or products, or (c) engages in any activity detrimental to the enterprise in its judgment.

The Plan provides the following Claims Procedures at section 6.5,

> (a) If a claim for benefits under the Plan is denied, in whole or in part, the Executive Committee or its designee will provide a written notice of the denial within a reasonable period of time, but not later than 90 days after the claim is resolved. If special circumstances require more time to process the claim. The Executive Committee or its designee will issue a written explanation of the special circumstances prior to the end of the 90-day period and a decision will be made as soon as possible, but not later than 180 days after the claim is resolved.
>
> The written notice of claim denial will include:
>
> > (1) Specific reasons why the claim was denied;
> >
> > (2) Specific references to applicable provisions of the Plan document or other relevant records for papers on which the denial is based, and information about where a Participant or his or her designated Beneficiary may see them;
> >
> > (3) A description of any additional material or information needed to process the claim and an explanation of why such material or information is necessary;
> >
> > (4) An explanation of the claim review proceudre, including the time limits applicable to such procedure, as well as a statement notifying the Participant or his or her designed Beneficiary of their right to file suit if the claim for benefits is denied, in whole or in part, on review.
>
> Upon request, a Participant of his or her designated Beneficiary will be provided without charge, reasonable access to, and copies of, all non-confidential documents that are relevant to any denial of benefits. A claimant has 60 days from the day he or she

receives the original denial to request a review. Such request must be made in writing and sent to the Executive Committee or its designee. The request should state the reasons why the claim should be reviewed and may also include evidence or documentation to support the claimant's position.

The Executive Committee or its designee will reconsider the claimant's claim, taking into account all evidence, documentation, and other information related to the claim and submitted on the claimant's behalf, regardless of whether such information was submitted or considered in the initial denial of the claim. The Executive Committee or its designee will make a decision within 60 days. If special circumstances require more time for this process, the claimant will receive a written explanation of the special circumstances prior to the end of the initial 60-day period and a decision will be sent as soon as possible, but not later than 120 days after the Executive Committee or its designee receives the request.

(b) <u>Exhaustion of Remedies</u> – No legal action for benefits under the Plan shall be brought unless and until the following steps have occurred:

(1) The claimant has submitted a written application for benefits;

(2) The claimant has been notified that the claim has been denied;

(3) The claimant has filed a written request appealing the denial in accordance with Section 6.5 and

(4) The claimant has been notified in writing that his or her appeal has been denied or that no action on the appeal has taken place within the time prescribed by this Section 6.5.

On November 15, 2012, Chiodi wrote to Owens explaining that he forfeited his rights under the Plan because he "entered into a business relationship or employment" with other insurance companies within three years after his retirement. The letter directed Owens to re-pay a certain amount paid to him under the Plan, plus taxes that the Western & Southern paid on the forfeited

4

amount, by December 14, 2012. Western & Southern informed Owens that it would "pursue all legal remedies to which [it] may be entitled," if payment were not received by the appointed date.

Espat received a similar letter from Chiodi that was dated December 26, 2012, informing him that he forfeited his rights under the Plan by "enter[ing] into a business relationship or employment" with other insurance companies within three years after his retirement. The correspondence directed Espat to re-pay a certain amount paid to him under the Plan, plus taxes that the Western & Southern paid on the forfeited amount, by December 28, 2012, or an alternative amount by January 18, 2013. Western & Southern informed Espat that it would "pursue all legal remedies to which [it] may be entitled," if payment were not received by one of the aforementioned dates.

Neither Owens nor Espat responded to the letters. On March 28, 2013, Western & Southern filed suit against Owens in the Court of Common Please, Hamilton County, Ohio seeking to recoup the amount that it previously paid to Owens that Western & Southern claims Owens forfeited under the Plan. Western & Southern alleged claims of breach of contract, promissory estoppel and unjust enrichment. On April 18, 2014, the court dismissed that suit for lack of jurisdiction, finding that Western & Southern's claims against Owens arose under an ERISA plan and were preempted by 29 U.S.C. § 1144. On May 8, 2014, Western & Southern appealed that decision to the Court of Appeals of Hamilton County, Ohio, First Appellate District. The appellate court noted that the parties agreed that the Plan is a "top-hat" plan, and affirmed the trial court's decision that Western & Southern's state-law claims were preempted by ERISA.

On June 12, 2013, Owens and Espat filed this action seeking benefits under the Plan. They allege that the Plan is governed by ERISA, and that they are entitled to an additional $70,000 each in unpaid benefits under the Plan, which Western and Southern is "refusing to pay . . . without good

5

or lawful cause." Defendants filed a motion for summary judgment arguing that plaintiffs' claims should be dismissed, or remanded to the plan administrator for consideration, because plaintiffs never pursued the administrative process outlined in the Plan with respect to the claims for benefits that they raise in this lawsuit.[2] Plaintiffs argue that they are not required to engage in the administrative process because they never received the Plan documents and were unaware of administrative process, pursuing the administrative process would be futile and the forfeiture letters failed to include information about the administrative process as required by 29 C.F.R. § 2560.503-1(g).[3]

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be]

---

[2] Defendants also argued that they are entitled to summary judgment because plaintiffs clearly violated the Plan by engaging in competing businesses. This argument need not be addressed because remand to the plan administrator is appropriate.

[3] Plaintiffs filed a motion for summary judgment arguing that they are entitled to benefits under the Plan as a matter of law because they were not provided with a summary plan description or a copy of the Plan, were not advised of any provision that would disqualify them from receiving benefits under the Plan, and their status as independent agents with other insurance companies does not violate the Plan's forfeiture provision. These arguments need not be addressed because remand to the plan administrator is appropriate.

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit , evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**II.     Administrative Process**

Western & Southern argues that dismissal of plaintiffs' claims or remand to the plan administrator is appropriate because plaintiffs failed to exhaust the Plan's administrative remedies prior to filing suit.

A person claiming benefits under an ERISA plan must exhaust all administrative remedies available under the plan prior to bringing an action in court for denial of benefits. Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps., 215 F.3d 475, 479 (5th Cir. 2000) (citing Denton v. First Nat'l Bank of Waco, 765 F.2d 1295, 1300 (5th Cir. 1985)). The policies underlying the exhaustion requirement are to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

Meza v. Gen. Battery Corp., 908 F.2d 1262, 1279 (5th Cir. 1990) (citing Denton, 765 F.2d at 1300). Applying these policies, the United States Court of Appeals for the Fifth Circuit has held that ERISA claimants are required "to make some attempt at obtaining their benefits trough the administrative route, or at the very least, to make some effort to learn of the process applicable to them." Id. Thus, "Meza imposes a duty to seek the necessary information even if it has not been made available," because the ERISA claimant "is bound by the plan's administrative procedures and must use them before filing suit." Bourgeois, 215 F.3d at 480 (citing Meza, 908 F.2d at 1279).

However, futility is an exception to the exhaustion of administrative remedies requirement. Id. at 479. An ERISA claimant must "show hostility or bias on the part of the administrative review committee" to prevail on a futility claim. McGowin v. ManPower Int'l, Inc., 363 F.3d 556, 559 (5th Cir. 2004). Statements made by high-ranking company officers or employees who are not responsible for adjudicating benefits claims "do not conclusively show that an administrative committee would reject a claim for benefits," so as to demonstrate futility. Id. (citing Bourgeois, 215 F.3d at 479).

In this case, plaintiffs have not pursued the administrative process. Plaintiffs argue that they are exempt from doing so because they contend that they did not receive copies of the Plan. However, when plaintiffs received the forfeiture letters, they were obligated to contact Western & Southern to seek the necessary information regarding the Plan's administrative process. Bourgeois, 215 F.3d at 480 (citing Meza, 908 F.2d at 1279). Plaintiffs did not respond to Western & Southern's

forfeiture letters or attempt to discover the administrative process prior to filing this action. Therefore, plaintiffs are not excused from pursuing the administrative process because they allegedly did not receive copies of the Plan.

Plaintiffs also argue that pursuing the administrative process would be futile because Western & Southern sent the forfeiture letters and sued Owens. Neither the forfeiture letters, nor the lawsuit demonstrate futility. The Plan provides that the "Executive Committee or such other department or committee of the Company as the Executive Committee shall designate shall have the discretionary authority to determine eligibility for benefits and construe the terms of the Plan." Plaintiffs have not demonstrated hostility or bias on the part of the administrative review committee or that the administrative committee would reach the same conclusion as Chiodi, the Senior Vice President of Human Resources who sent the forfeiture letters, or the company officials directing the lawsuit. Also, there is no indication that Chiodi or the company officials directing the lawsuit are part of the Plan's administrative review committee. Further, Chiodi sent the letter to Owens on November 15, 2012. Western & Southern's lawsuit against Owens was filed four months later, on March 28, 2013. Owens had plenty of time to contact Western & Southern and discover and pursue the administrative process prior to Western & Southern's filing suit. Therefore, plaintiffs have not demonstrated that the futility exception to the exhaustion requirement applies.

Plaintiffs also argue that they are exempt from the administrative exhaustion requirement under 29 C.F.R. § 2560.503-1. Section 1133(1), Title 29 of the United States Code provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall - -
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied,

> setting forth the specific reasons for such denial, written in a manner
> calculated to be understood by the participant[.]

29 U.S.C. § 1133.  The "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries," is set forth in 29 C.F.R. § 2560.503-1, "[i]n accordance with the authority of sections 503 and 505 of the Employee Retirement Income Security Act of 1974 (ERISA or the Act), 29 U.S.C. 1133, 1135[.]" 29 C.F.R. § 2560.503-1(a).  Subsection (l) provides that if the plain fails "to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to" bring a civil action. Id. at § 2560.503-1(l).

Plaintiffs claim that under subsection (l), they are deemed to have exhausted their administrative remedies because the forfeiture letters failed to comply with subsection (g)(1)(iv). Subsection (g)(1)(iv) requires notifications of benefits determinations to include a description of the plan's review procedures and applicable time limits, and a statement regarding the claimant's right to bring a civil action following an adverse benefits determination after such review.  Id. at § 2560.503-1(g)(1)(iv).  The forfeiture letters did not include such a statement.  However, section 2560.503-1 does not apply to the forfeiture letters.  Subsection (a) specifies that section 2560.503-1 applies to "employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries. . ." Id. at § 2560.503-1(a).  Subsection (e) defines a "claim for benefits" as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." Id. at § 2560.503-1(e).  The forfeiture letters were not issued in response to a "claim for benefits."  Indeed, plaintiffs never made a "claim for benefits" under the Plan. Therefore, plaintiffs are not deemed to have exhausted their administrative remedies under section 2560.503-1(l) because the forfeiture letters did not conform to subsection (g).

Because plaintiffs did not exhaust their administrative remedies, and no exception applies, it is appropriate to remand this action to the plan administrator for a determination. Plaintiffs must exhaust all administrative remedies outlined in the Plan. Western & Southern may not raise a time limitation defense because it suggested in this action that remand to the plan administrator is appropriate. Therefore, Western & Southern's motion for summary judgment is GRANTED, and this matter is REMANDED to the plan administrator for consideration.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #66) is **GRANTED**, and this matter is **REMANDED** to the plan administrator for consideration.

**IT IS FURTHER ORDERED** that this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** while the plaintiffs pursue the administrative process.

New Orleans, Louisiana, __31st__ day of July, 2015.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**