UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EARL E. OWENS AND<br>JOSEPH WAYNE ESPAT | CIVIL ACTION |
| VERSUS | NO: 13-4782 |
| THE WESTERN & SOUTHERN LIFE<br>INSURANCE COMPANY AND<br>THE WESTERN & SOUTHERN LIFE<br>INSURANCE LONG TERM<br>INCENTIVE AND RETENTION PLAN | SECTION: "S" (4) |

### ORDER AND REASONS

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. #112) is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is **GRANTED** (Doc. #115).

### BACKGROUND

This matter is before the court on cross-motions for summary judgment filed after administrative review of plaintiffs' claims. Defendants, The Western & Southern Life Insurance Company and The Western & Southern Life Insurance Long Term Incentive and Retention Plan, argue that the plan administrator's denial of benefits should be upheld. Conversely, plaintiffs, Earl E. Owens and Joseph Wayne Espat, argue that the plan administrator's decision should be vacated and that they should be awarded benefits.

Plaintiffs are retired former employees of Western & Southern Life Insurance Company ("Western & Southern"). Western & Southern provides financial services including life and health insurance, retirement savings, and investment products and services. Both Owens and Espat were participants in the Western & Southern Agency Group Long Term Incentive and Retirement Plan

(the "Plan"), which was "designed to provide an incentive for selected key field associates of the Western & Southern Agency Group to maximize performance and remain with the organization." To be eligible for participation in the Plan the employee must be "in the top 5% of Employees when ranked by annual compensation as measured during the previous calendar year." In 2006 and 2008, Owens and Espat, respectively, first became eligible to participate in the Plan. Kim Chiodi, Senior Vice President of Human Resources for The Western & Southern Financial Group, declared in her affidavit that it is Western & Southern's practice to provide the summary plan description, titled "Western & Southern Agency Group Field Long Term Incentive and Retention Plan Outline" to employees when they first become eligible to participate in the Plan. Plaintiffs deny receiving the summary plan description.

The Plan includes a forfeiture provision, which states, in pertinent part:

> 4.7 <u>Forfeitures.</u> The contingent right of Participant or Beneficiary to receive future payments hereunder with respect to both vested and nonvested Performance Units shall be forfeited upon the occurrence of any one or more of the following events:
>
> \* \* \*
>
> (b) If the Participant within three years after termination of employment with the Company or any Affiliate (1) enters into a business or employment which is competitive with the business of the Company or any Affiliate, (2) solicits the Company's or any Affiliates' employees, agents or clients to work for or buy products from, or (3) acts in any other way which, had the Participant been employed with the Company or any Affiliate, would have provided the Company with "Cause" to terminate such Participant's employment.

2

>However, the Executive Committee may, in its sole discretion waive or reduce the forfeiture of payments described above.

Section 1.1(a)(5) of the Plan defines "Cause" as follows:

>(5) "Cause" shall mean (i) the failure of an Employee, for reasons other than disability or incapacity, to perform his duties faithfully, competently, and in accordance with the standards determined by the Company for the position and title which he holds, (ii) the Employee's conviction for the commission of an act or acts constituting a felony under the laws of the United States or any state thereof, (iii) action by the Employee toward the Company or any Affiliate involving dishonesty, (iv) the Employee's nonfeasance, (v) the Employee's disparagement of the Company or any Affiliate or any product or service of the Company or any Affiliate, or (vi) other conduct by the employee which is demonstrably and materially injurious to the Company or any Affiliate, monetarily or otherwise.

The summary plan description states:

>**Forfeiture, Vested and Unvested Units** - A participant's vested and unvested units will be forfeited if:
>
>\*   \*   \*
>
>3) A participant, within three years after termination of service, including service as a field associate or independent contractor, (a) engages in a business that competes with any of the business of the Western & Southern Financial Group, (b) solicits field associates, agents or clients of the enterprise for competitive employment or products, or (c) engages in any activity detrimental to the enterprise in its judgment.

On November 15, 2012, Chiodi wrote to Owens explaining that he forfeited his rights under the Plan because he "entered into a business relationship or employment" with other insurance companies within three years after his retirement in violation of the Plan. The letter directed Owens to re-pay a certain amount paid to him under the Plan, plus taxes that the Western & Southern paid on the forfeited amount, by December 14, 2012. Western & Southern informed Owens that it would

3

"pursue all legal remedies to which [it] may be entitled," if payment were not received by the appointed date.

Espat received a similar letter dated December 26, 2012, from Chiodi, informing him that he forfeited his rights under the Plan by "enter[ing] into a business relationship or employment" with other insurance companies within three years after his retirement. The correspondence directed Espat to re-pay a certain amount paid to him under the Plan, plus taxes that the Western & Southern paid on the forfeited amount, by December 28, 2012, or an alternative amount by January 18, 2013. Western & Southern informed Espat that it would "pursue all legal remedies to which [it] may be entitled," if payment were not received by one of the aforementioned dates.

Neither Owens nor Espat responded to the letters. On March 28, 2013, Western & Southern filed suit against Owens in the Court of Common Pleas, Hamilton County, Ohio seeking to recoup the amount that it previously paid to Owens that Western & Southern claims Owens forfeited under the Plan. Western & Southern alleged claims of breach of contract, promissory estoppel and unjust enrichment. On April 18, 2014, the court dismissed that suit for lack of jurisdiction, finding that Western & Southern's claims against Owens arose under an ERISA plan and were preempted by 29 U.S.C. § 1144. On May 8, 2014, Western & Southern appealed that decision to the Court of Appeals of Hamilton County, Ohio, First Appellate District. The appellate court noted that the parties agreed that the Plan is a "top-hat" plan[1], and affirmed the trial court's decision that Western & Southern's state-law claims were preempted by ERISA.

---

[1] A "top-hat" plan is an ERISA "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1).

4

On June 12, 2013, Owens and Espat filed this action seeking benefits under the Plan. They allege that the Plan is governed by ERISA, and that they are entitled to an additional $70,000 each in unpaid benefits under the Plan, which Western and Southern is "refusing to pay . . . without good or lawful cause."

Defendants filed a motion for summary judgment arguing that plaintiffs' claims should be dismissed, or remanded to the plan administrator for consideration, because plaintiffs never pursued the administrative process outlined in the Plan with respect to the claims for benefits that they raise in this lawsuit. Defendants also argued that they are entitled to summary judgment because plaintiffs clearly violated the Plan by engaging in competing businesses. Plaintiffs argued that they are not required to engage in the administrative process because they never received the Plan documents and were unaware of administrative process, pursuing the administrative process would be futile and the forfeiture letters failed to include information about the administrative process as required by 29 C.F.R. § 2560.503-1(g). Plaintiffs filed a cross-motion for summary judgment arguing that they are entitled to benefits under the Plan as a matter of law because they were not provided with a summary plan description or a copy of the Plan, were not advised of any provision that would disqualify them from receiving benefits under the Plan, and their status as independent agents with other insurance companies does not violate the Plan's forfeiture provision.

The court found that plaintiffs did not exhaust their administrative remedies, and no exception to the administrative process requirement applied. Thus, the matter was remanded to the plan administrator for a determination with instructions that plaintiffs must exhaust all administrative remedies outlined in the Plan. Western & Southern was prohibited from raising a time limitation

5

defense because it suggested that remand to the plan administrator was appropriate. The matter was stayed and administrative closed while the plaintiffs pursued the administrative process.

On August 5, 2015, plaintiffs submitted their claims to the plan administrator. On October 29, 2015, Donald J. Wuebbling, Secretary and Counsel of Western & Southern wrote to plaintiffs' counsel to inform him that the plan administrator denied plaintiffs' claim for benefits. The letter stated that the plan was a "top-hat" plan and outlined the forfeiture provisions. It also stated that the plan administrator determined that plaintiffs "engaged in business affiliations with organizations competitive with the Company within three years of their termination of employment and that had they engaged in this activity while employed by the Company, their employment would have been terminated for 'Cause'." Thus, under the Plan, they forfeited the benefits.

Plaintiffs appealed and provided supplemental documentation. On February 25, 2016, Wuebbling wrote plaintiffs' counsel to inform him that the plan administrator upheld the denial of benefits. The specific reason for denial was:

> The Executive Committee determined in its discretion that Claimants entered into a business which is competitive with the business of the Company in violation with the terms of the Plan. Claimants were appointed and licensed with organizations competitive with the Company after their respective termination of employment with the Company. Furthermore, the Executive Committee in its discretion determined that by becoming licensed and appointed with organizations competitive with the Company, Claimants acted in a manner that had the Claimants been employed with the Company would have provided the Company with "Cause" to terminate Claimants' employment.

Thereafter, this court granted plaintiffs' motion to reopen these proceedings, and the parties filed the instant cross-motions for summary judgment. Western & Southern argues that the plan administrator's denial of benefits should be upheld because there is substantial evidence in the

administrative record to demonstrate that plaintiffs forfeited their benefits under the Plan by becoming licensed to sell insurance for other companies. Western & Southern argues that this licensing constitutes two grounds for forfeiture: engaging in a competitive business and engaging in conduct for which they would have been terminated for cause had they still been employed by Western & Southern.

Plaintiffs argue that the plan administrator's decision should be vacated because they should not be bound by the forfeiture provisions of which they were not notified. Plaintiffs also argue that they did not engage in a competitive business because Western & Southern did not sell the insurance products that the new companies did or would not have sold to the clients because the clients were too old to be insured under Western & Southern's insurance products. Western & Southern contends that plaintiffs notice argument should be rejected because plaintiffs have admitted in this litigation, and the Ohio court found, that the Plan is a "top-hat" plan which is exempt from ERISA's notice requirements.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be]

7

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit, evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II.   "Top-Hat" Plan and Notice

### A. Judicial Estoppel

Plaintiffs argue that the Plan is not a "top-hat" plan and that they did not receive proper notice of the forfeiture provisions. Western & Southern argues that plaintiffs have admitted in multiple pleadings in this case that the Plan is a "top-hat" plan and that they are judicially estopped from now arguing otherwise. Further, Western & Southern argues that the Ohio court found, and this court acknowledged, that the Plan is a "top-hat" plan.

The judicial estoppel doctrine prevents "a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding." Feder

v. Elec. Data Sys. Corp., 429 F.3d 125, 136 (5th Cir. 2005). Judicial estoppel applies if "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2012).

Plaintiffs have taken the position that the Plan is a "top-hat" plan in multiple pleadings. In their memorandum in opposition to defendants' motion for leave to file a counter-claim (Doc. #45), plaintiffs stated that the Plan is a "top-hat" plan. Plaintiffs again stated that the Plan is a "top-hat" plan in their supplemental memorandum in support of their motion to compel discovery (Doc. #46-1). This court has accepted the position that the Plan in a "top-hat" plan by acknowledging it in the Order and Reasons staying the case and remanding the matter to the plan administrator (Doc. #99). Because plaintiffs repeatedly stated that the plan is a "top-hat" plan, they are judicially estopped from changing their position regarding the Plan's "top-hat" status at this point in the litigation.

## IV. "Top-Hat" Plans

Plaintiffs argue that they are not bound by the Plan's forfeiture provisions because they never received a summary plan description and were not informed of such provisions. Defendants argue that, because the Plan is a "top-hat" plan, they were not required to provide a summary plan description to plaintiffs.

ERISA defines a "top-hat" plan as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). "Top-hat" plans are exempt from ERISA's participation and vesting provisions, 29 U.S.C. §§ 1051-1061, its funding

9

provisions, 29 U.S.C. §§ 1081-1086, and its fiduciary responsibility provisions, 29 U.S.C. §§1101-1114, but not its reporting and disclosure provisions 29 U.S.C. §§ 1021-1031, or its administration and enforcement provisions, 29 U.S.C. §§ 1131-1145. Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 287 (2d Cir. 2000).

Although "top-hat" plans are not exempt from ERISA's reporting and disclosure requirements, the Secretary of Labor is authorized to promulgate regulations providing for alternative methods for satisfying these requirements. 29 U.S.C. § 1030. The regulations provide that a "top-hat" plan is deemed to have satisfied ERISA's reporting and disclosure requirements, including providing a summary plan description and annual reports to beneficiaries of the plan, by filing a short statement with the Secretary of Labor and providing plan documents to the Secretary upon request. Id. at 290 (citing 29 C.F.R. § 2520.104-23(b); 29 U.S.C. § 1030). The short statement is to be filed within 120 days of the date the plan became subject to ERISA and it must include:

> the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of such plans and the number of employees in each plan.

29 C.F.R. § 2520.104-23(b).

Western & Southern filed "top-hat" statements with the Secretary of the Department of Labor on April 21, 2006, and on October 11, 2012. These letters include the information required by § 2520.104-23(b). Plaintiffs argue that the letter are insufficient because they did not comply with ERISA's disclosure provisions found at 29 U.S.C. §§ 1021-1031, particularly the letters do not include information regarding circumstances that may result in disqualification, ineligibility or denial

or loss of benefits which must be included in the summary plan description required to be provided to plan participants by 29 U.S.C. § 1022. Plaintiffs are correct that this information is not in the letters. However, the Plan is a deemed to have satisfied ERISA's reporting and disclosure requirements because it complied with the alterative reporting requirement promulgated in 29 C.F.R. § 2520.104-23(b). Demery, 216 F.3d at 290. Therefore, Western & Southern was not required to provide a summary plan description to plaintiffs.

### III.  ERISA Standard of Review

Western & Southern argues that the plan administrator's denial of benefits should be upheld because plaintiffs forfeited their benefits under the Plan by becoming licensed to sell insurance for other companies. Western & Southern argues that this licensing constitutes two grounds for forfeiture, engaging in a competitive business and engaging in conduct for which they would have been terminated for cause had they still been employed by Western & Southern.

Plaintiffs argue that the plan administrator's decision should be overturned because they did not violate the forfeiture provision. They contend that, as independent contractors, they were not employed by other insurance companies, and they did not engage in a competitive business because Western & Southern did not sell the insurance products that the new companies did or would not have sold to the clients because of their ages.

In reviewing an ERISA plan administrator's decision, a district court "must apply an abuse of discretion standard only when the Plan itself confers discretionary authority on the Trustees to interpret the Plan." Branson v. Greyhound Lines, Inc. Amalgamated Council Retirement and Disability Plan, 126 F.3d 747, 756 (5th Cir.1997). In Chevron Chem. Co. v. Oil, Chem. and Atomic Workers Local Union 4-447, 47 F.3d 139, 143 (5th Cir. 1995), the United States Court of Appeals

11

for the Fifth Circuit held that the district court may apply the abuse of discretion standard when the plan gives the plan administrator discretionary authority to "make such rules, regulations, [and] *interpretations* . . . and [to] take such other action . . . as [he] may deem appropriate." (emphasis and alterations in original) (quoting pension plan). If the Plan does not give discretionary authority to the "administrator or fiduciary," a denial of benefits is reviewed under a de novo standard. Firestone Tire & Rubber Co. v. Bruch, 109 S.Ct. 948, 956-57 (1989).

The Plan provides that it is "administered by the Benefits Department of the Company or as the Executive Committee may otherwise direct." Section 6.3 provides that the Executive Committee or its designees "shall have the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan . . .[,]" and that its decision "upon any matter within its or their authority shall be final and binding on all parties . . . " Because the Plan expressly grants the plan administrator discretion to determine eligibility, the court will apply the abuse of discretion standard.

The United States Court of Appeals for the Fifth Circuit employs

> a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms. We first determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with the proper legal interpretation. If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. However, if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion.

Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 227-28 (5th Cir. 2004) (internal citations omitted).

In determining whether the administrator's interpretation of the plan was legally correct, the court must consider "(1) whether a uniform construction of the [plan] has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated

12

costs will result from a different interpretation of the policy." Id. at 228; Attenberry v. Mem'l-Hermann Healthcare Sys., 405 F.3d 344, 349 (5th Cir. 2005).

The plan administrator did not abuse its discretion in denying plaintiffs' claims for benefits because it applied a legally correct interpretation of the Plan. The Plan provides that an employee forfeits benefits by entering into employment that competes with Western & Southern or engaging in conduct that would provide Western & Southern with "cause" to terminate him if he were still employed by the company. Plaintiffs became independent contractors to sell insurance for other companies. Although plaintiffs argue that this was not competitive business because they sold insurance products that Western & Southern did not sell, plaintiffs admitted that such licensing would have been "cause" for their termination had they still been employed by Western & Southern. Further, the plan administrator's finding that becoming licensed to sell insurance for another company constitutes engaging in competing business is a reasonable interpretation of the Plan. Thus, the plan administrator did not abuse its discretion in denying plaintiffs' claims for benefits. Defendants' motion for summary judgment is **GRANTED**, and plaintiffs' motion for summary judgment is **DENIED**.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. #112) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** (Doc. #115).

New Orleans, Louisiana, __7__ day of September, 2016.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

New Orleans, Louisiana, __7__ day of September, 2016.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**